75209. WILLIAMS v. SUMMIT PSYCHIATRIC CENTERS, P.C.
(363 SE2d 794)

BIRDSONG, Chief Judge.

Summary Judgment — False Imprisonment — Res Judicata. This is the second appearance of this case before this court. See *Williams v. Smith*, 179 Ga. App. 712 (348 SE2d 50). For a succinct statement of the facts, see that case. Mrs. Williams sued both Dr. Smith and Summit Psychiatric Centers, P.C. in this suit in three tort counts but sought recovery from Summit only in the first count alleging false imprisonment. Also it is quite clear that Mrs. Williams seeks a recovery from Summit as the employer of Smith on the theory of respondeat superior. After the case was remanded back to the trial court for further consideration of the allegations against Summit following the discharge of the employee Smith on grant of summary judgment, Summit moved for summary judgment on several grounds, one being res judicata. Mrs. Williams sought to. avoid the grant of summary judgment on that ground by submitting a second affidavit in which she sought to show that persons and employees of Summit other than Smith were involved in the imprisonment and thus the doctrine of res judicata would not apply. The trial court rejected this reasoning and granted summary judgment to Summit. It is this grant that forms the basis of Mrs. Williams' second appeal. *Held*:

1. In her affidavit in contravention of Smith's motion for summary judgment, Mrs. Williams had submitted the following: "On 20 March, 1984 I went to the offices of Summit Psychiatric Centers, P.C. for counseling because of marital problems. The lady psychologist suggested that I needed medication to sleep at night and that she would have a doctor write a prescription for me. I told her . . . I did not want to take any medication. Dr. Randy Smith, an employee of Summit Psychiatric Centers, P.C. then entered the room and told me he was going to commit me and that I could not leave. I asked him not to do so. I pointed out that I was in the middle of a divorce and that the custody of my child would be in jeopardy if he committed me, that I was not suicidal and just wanted to return to my job. Dr. Smith said I was not free to return to my job and that, on him execut-

ing the appropriate paperwork, I would be committed. After some time I was able to call my attorney. Then I picked up my things, left the office and returned to my employment at Cobb General Hospital."

On remand to consider further the complaint against Summit, and to supplement her affidavit in those proceedings against Summit, Mrs. Williams filed an additional affidavit in which she stated: "On 20th March, 1984 I went to the offices of Summit Psychiatric Centers, P.C. for counseling because of marital problems. The lady psychologist suggested that I needed medication to sleep at night and that she would have a doctor write a prescription for me. I told her that I did not want to take any medication. Dr. Randy Smith, an employee of Summit Psychiatric Centers, P.C. then entered the room and told me he was going to commit me and that I could not leave. He told me that if I were to leave I would be arrested and physically taken to a mental hospital and that therefore the employees of Summit Psychiatric Centers, P.C. would prevent me from leaving the premises. I was left in a room by myself and when I opened the door I saw that I was being watched by several employees of Summit Psychiatric Centers, P.C. with great attention. I feared that if I tried to leave, I would be physically and forcefully restrained and that force would be used to stop me leaving. I was again told I could not leave by employees of Summit Psychiatric Centers, P.C. that I was being committed and would be physically restrained from leaving the premises, to the extent that force would be used. During this time Dr. Smith and other employees of Summit Psychiatric Centers, P.C. came in and out of the room where I was held, each telling me not to leave. I was thus restrained of my liberty for a considerable period of time. Only after the reassurance of my attorney, through her secretary, that I could not be legally held, did I attempt to leave."

2. In the first decision of this case involving the employee of Summit Psychiatric Centers, P.C., Dr. Smith, this court held: " 'False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty.' OCGA § 51-7-20. 'The restraint constituting a false imprisonment may arise out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit, and it is sufficient if they operate upon the will of the person threatened and result in a reasonable fear of personal difficulty or personal injuries. . . .' However, 'the evidence in this case demands a finding that [appellee] did nothing to induce a reasonable fear in [appellant] that there would be a personal difficulty or personal injury if [she] had refused the command or request made. . . .' The evidence is undisputed that, notwithstanding anything that appellee may have said to her, appellant was at all times allowed to move freely about

the Summit premises and that, when she left, she did so without incident. It thus appears that appellant was at no time physically restrained by virtue of any 'threat' of immediate detention at the hands of appellee. 'Threats to imprison are not imprisonments. To constitute false imprisonment, there must be actual physical restraint . . . by force or fear. . . .' The trial court did not err in granting appellee summary judgment as to Count One [false imprisonment]." *Williams v. Smith*, supra at p. 713 (1). (Emphasis deleted.)

3. Mrs. Williams contends that the findings of fact and law in *Smith*, supra, should not be dispositive as to her complaint against Summit for she has submitted a much fuller factual statement in this second consideration of the restraint at the Summit psychiatric facility. We are not persuaded by this contention. In the affidavit in *Smith*, Mrs. Williams presented her feelings that Dr. Smith told her he was going to commit her and that she was not free to leave. She contended Smith emphasized to her that she could not return to work at her job and that she would be committed as soon as he prepared the necessary paper work. This court concluded that this constituted nothing more than a verbal threat of imprisonment and that Mrs. Williams was free to move about, use the telephone and to leave when she desired, all of which she did. While in the second affidavit, Mrs. Williams set forth more facts showing the basis of her fear of trying to leave, in substance she presented no further evidence that she was physically restrained or was not actually free to use the phone and to leave when she wanted to go without any effort to restrain her. Simply fleshing out with additional detail the threats of restraint did not convert the threat of imprisonment into actual imprisonment. Thus we find the consideration of the false imprisonment issue and the holding thereto as issued in *Smith*, supra, to be dispositive of the false imprisonment Count I as to Summit. Moreover, the liability of Summit being purely derivative (as discussed in the next division) and dependent on the doctrine of respondeat superior, a judgment in favor of the servant and against Williams is res judicata in favor of the master, Summit, in the continuation of the suit by Williams. *Gilmer v. Porterfield*, 233 Ga. 671, 673 (1) (212 SE2d 842). This application of the doctrine of res judicata renders Mrs. Williams' additional facts relating to her subjective fears and imprisonment nugatory, for the issues settled in *Smith*, supra, are conclusive between Mrs. Williams, Smith and Smith's privies not only as to all matters put in issue in the *Smith* case but those facts that could have been put in support of those issues. See *Delta Air Lines v. Woods*, 137 Ga. App. 693, 695 (224 SE2d 763).

4. There is a second ground for this decision. It is manifestly clear that Summit, as a corporation, did nothing in its individual corporate capacity to ever issue a threat to Mrs. Williams to imprison

her. The only possible threats were by Dr. Smith and facially supported by other unnamed employees of Summit. There is no evidence in this record of any acts by Summit other than through its employees. It is well established that when a claim is brought based solely on the actions of a servant or servants and the servant has received a favorable verdict exonerating the servant from all liability and the pleadings do not show an independent tort by the master, the legal theorum of respondeat superior has no application and the master is entitled to a verdict in his favor as well. *Gilmer v. Porterfield,* supra; *Colonial Stores v. Fishel,* 160 Ga. App. 739, 742 (288 SE2d 21). We find this additional ground to support our conclusion of no error in the grant of summary judgment to Summit.

5. The additional enumerations of error by Williams are rendered moot by the result reached herein relating to the issue of res judicata and respondeat superior, and accordingly need not be addressed.

6. The dissent finds it "cannot agree with the majority opinion that the appellant's second affidavit does not establish a factual issue over whether any acts, gestures, or words of the center's employees induced a reasonable apprehension that force would be used to keep her there if she tried to leave." What the majority holds is: "Thus we find the consideration of the false imprisonment issue and the holding thereto as issued in *Smith* [179 Ga. App. 712 (1)] to be dispositive of the false imprisonment Count I as to Summit."

In *Williams v. Smith,* supra, with all nine judges concurring, this court found that Mrs. Williams was not falsely imprisoned at the Summit Psychiatric Center on this occasion. Id. (1). The dissent would hold that this issue, which has been settled by the trial and the appellate courts, can now be relitigated because Mrs. Williams has filed a second affidavit which gives a different account of this incident than the one she gave in her first affidavit. "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." OCGA § 9-12-40. The dissent correctly recognizes that Summit is in privity with Dr. Smith, because the liability of Summit was derivative and dependent upon the principle of respondeat superior. Thus, that which is res judicata as to Dr. Smith is res judicata to his employer, Summit. *Hunter v. Embree,* 122 Ga. App. 576, 577 (178 SE2d 221); *Giles v. Smith,* 80 Ga. App. 540, 543 (56 SE2d 860); *Roadway Express v. McBroom,* 61 Ga. App. 223 (1) (6 SE2d 460). Further, the doctrine of res judicata will bar an action "even if some new factual allegations have been made. . . ." *Kenney v. Don-Ra,* 178 Ga. App. 492, 495 (1) (343 SE2d 779); *Medlin v. Carpenter,* 174 Ga. App. 50, 51 (2) (329

SE2d 159). Hence, as stated above, the consideration of the false imprisonment issue in *Williams v. Smith*, supra, is dispositive of any claim of false imprisonment as to Summit, who is in privity with Dr. Smith because of their master-servant relationship, upon which Williams' claim of liability is based.

*Judgment affirmed. Banke, P. J., Carley, Sognier, Pope, and Benham, JJ., concur. Deen, P. J., McMurray, P. J., and Beasley, J., dissent.*

DEEN, Presiding Judge, dissenting.

When the grant of summary judgment for the actual psychiatrist was before this court previously, this court held that the appellant's affidavit was insufficient to demonstrate false imprisonment because there was no evidence of actual physical restraint by force or fear. *Williams v. Smith*, 179 Ga. App. 712 (348 SE2d 50) (1986). I agreed with that determination then and still agree with it, based on that initial affidavit. I would, however, have reached the opposite conclusion had the affidavit subsequently submitted by the appellant been before this court at that time.

In that second affidavit, quoted by the majority opinion, the appellant states that the psychiatrist specifically told her that she would be arrested and physically taken to a mental hospital if she tried to leave, and that other employees as well repeatedly told her that she could not leave the center. As noted by this court in *Williams v. Smith*, supra at 713, false imprisonment may occur without actual restraint; the requisite element of restraint may arise out of any acts, gestures, or words that induce a reasonable apprehension that force will be used to restrain. I cannot agree with the majority opinion that the appellant's second affidavit does not establish a factual issue over whether any acts, gestures, or words of the center's employees induced a reasonable apprehension that force would be used to keep her there if she tried to leave. The fact that she eventually mustered the courage to try, and actually left without restraint, would not conclusively contradict her testimony that for a period of time she remained at the center solely out of fear of being restrained.

The majority opinion correctly concludes that under the doctrine of res judicata, the psychiatric center has no derivative liability stemming from the psychiatrist's acts or words, regardless of the additional facts recounted in the appellant's second affidavit. However, there is no basis for similarly barring a claim against the center based on the acts of the other employees. The majority opinion claims that in *Williams v. Smith*, supra, this court held that the appellant was not falsely imprisoned at the Summit Psychiatric Centers. However, the holding in that case was not quite so expansive; this court merely held that the *psychiatrist* was entitled to summary judgment on this

claim. Summit's liability was not addressed. Again, I agree that *Williams v. Smith*, supra, eliminates the psychiatrist as one of the bases for Summit's derivative liability, but it does not similarly eliminate the acts of Summit's other employees as a basis for liability.

Especially where psychiatric matters are concerned, mental freedom often goes hand in hand with physical liberty. " 'A psychiatrist who accepts as his "patient" a person who does not wish to be his patient, defines him as a "mentally ill" person, then incarcerates him in an institution, bars his escape from the institution and from the role of mental patient, and proceeds to "treat" him against his will — such a psychiatrist, I maintain, creates "mental illness" and "mental patients." He does so in exactly the same way as the white man who sailed for Africa, captured the Negro, brought him to America in shackles, and then sold him as if he were an animal, created slavery and slaves.' Ibid., p. 169. 'Involuntary Mental Hospitalization,' Thomas Szasz." *Shirley v. State*, 149 Ga. App. 194, 196 (253 SE2d 787) (1979).

The appellant's complaint may sound somewhat far-fetched, but that is no reason for this court to deny the proper effect of the appellant's evidence. Her second affidavit creates an issue of fact over whether she was falsely imprisoned by the employees of the psychiatric center, a factual issue that should be resolved by a jury.

Accordingly, I must respectfully dissent.

DECIDED NOVEMBER 24, 1987 —
REHEARING DENIED DECEMBER 11, 1987 —

*Adele P. Grubbs*, for appellant.
*Terrance C. Sullivan, Timothy H. Bendin*, for appellee.